UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS (WESTERN DIVISION)

ANGIODYNAMICS, INC.,

               Plaintiff,

     v.

WOLFGANG NEUBERGER, BIOLITEC AG,
BIOMED TECHNOLOGY HOLDINGS LTD.,
KEVIN BAKHSHPOUR, JACK FURCHT,
ANTHONY JAKUBOWSKI, WISDOM MEDICAL
TECHNOLOGY LLC, LAUNCH DEVELOPMENT
CORPORATION d/b/a LDC MEDICAL, INC.,
US FIBEROPTEC TECHNOLOGY, INC., CLARION
MEDICAL TECHNOLOGIES,

               Defendants.

**COMPLAINT**

Plaintiff AngioDynamics, Inc. ("AngioDynamics"), by its attorneys, Nixon Peabody

LLP, as and for its complaint against defendants Wolfgang Neuberger ("Neuberger"), Biolitec

AG ("BAG"), Biomed Technology Holdings Ltd. ("Biomed"), Kevin Bakhshpour

("Bakhshpour"), Jack Furcht ("Furcht"), Anthony Jakubowski ("Jakubowski"), Wisdom Medical

Technology LLC ("Wisdom"), Launch Development Corporation d/b/a LDC Medical, Inc.

("LDC"), US Fiberoptec Technology, Inc. ("US Fiberoptec"), and Clarion Medical Technologies

("Clarion"), alleges, upon information and belief, as follows:

## INTRODUCTION

1.     This case concerns the defendants' Racketeer Influenced and Corrupt

Organizations Act ("RICO") enterprise and conspiracy to fraudulently shield tens of millions of

dollars in United States and North American revenues from AngioDynamics's unsatisfied

judgment of $74,920,422.47, entered by this Court and affirmed by the First Circuit.

2.       For two and a half decades leading up to April 2015, the Biolitec group – a worldwide group of corporate entities ultimately owned and controlled by Neuberger – conducted profitable business in the United States and North America through U.S. subsidiary entities.

3.       Furcht and Bakhshpour were employees of U.S. Biolitec group entities, and of Neuberger, for decades until April 2015.

4.       Jakubowski is a former Neuberger/Biolitec group employee and a close friend and associate of Furcht.

5.       In mid-April 2015, AngioDynamics was on the verge of enforcing its $74.9 million judgment against the then-operating U.S. Biolitec entities: CeramOptec Industries, Inc. ("COI"), Biolitec Medical Devices, Inc. ("BMD"), Biolitec Holding U.S., Inc. ("BHUS"), and Biolitec U.S., Inc. ("BUS") (collectively the "Trustee Debtors").

6.       In response, the defendants developed and created the RICO enterprise.

7.       Beginning in April 2015, the RICO enterprise fraudulently removed nearly all valuable assets from the Trustee Debtors, liquidated the Trustee Debtors in Chapter 7 bankruptcy, and, most importantly, shifted the Biolitec group business formerly conducted by the Trustee Debtors to new entities (US Fiberoptec, Wisdom, LDC, and Clarion) designed to have no apparent ownership or management connection with Neuberger and the Biolitec group.

8.       The sole purpose of this new arrangement was to continue the flow of tens of millions of dollars in revenue to Neuberger and the other defendants while concealing and shielding that revenue from AngioDynamics to protect it from judgment enforcement.

4823-3199-7023.7

9.      To carry out this scheme, the RICO enterprise – which consists of all the defendants – has worked, and continues to work, together to commit a series of criminal predicate acts.

10.     The defendants committed bankruptcy fraud, using the Chapter 7 cases of the Trustee Debtors to launder the U.S. and North American Biolitec group business and shift it to Wisdom, LDC, US Fiberoptec, and Clarion, while allowing Neuberger, BAG, and Biomed (the "MA defendants") to continue receiving the same revenues, sheltered from judgment enforcement.

11.     In addition, the defendants committed and continue to commit mail and wire fraud.

12.     Through the mails, the internet, and the telephone, the defendants have communicated false and misleading information to their customers; have solicited, accepted, and shipped orders; and have communicated with each other to implement their scheme.

13.     Defendants used these mechanisms to assure their customers, beginning immediately after the April 2015 bankruptcies, that the flow of Neuberger/Biolitec group products would continue unchanged and sheltered from AngioDynamics's judgment enforcement efforts.

14.     Defendants continue to use these same mechanisms to provide the same reassurance to their customers and to ensure that the products in fact continue to flow to them.

15.     Defendants have used – and conspired to use – their RICO enterprise to launder the millions of dollars in revenues they have generated annually and continue to generate.

16.     Defendants have violated the federal Travel Act by using the mails in interstate commerce to implement their money-laundering scheme.

4823-3199-7023.7

17. Defendants have used a convoluted, misleading scheme involving fraudulently shipping their products first to Clarion in Canada and then from Clarion to the U.S.-based defendants, often re-labeling the packaging multiple times, to conceal the connection between the U.S.-based sales and the MA defendants.

18. Defendants have also conspired to violate RICO.

19. In violation of Massachusetts state law, defendants' actions constitute an unlawful conspiracy to prevent AngioDynamics from collecting its judgment.

20. Defendants' acts are unfair and deceptive business acts and practices in violation of M.G.L. c. 93A.

21. Other conspirators, to be identified during discovery, are likely involved in the RICO enterprise and conspiracy and acts alleged in this Complaint, and may also have liability for their participation in these acts.

### Subject Matter Jurisdiction

22. This court has subject matter jurisdiction under 18 U.S.C. §1964 because the defendants have committed multiple violations of 18 U.S.C. § 1962 (the RICO statute).

23. Pursuant to 28 U.S.C. § 1367, this Court has supplemental subject matter jurisdiction over the state law claims for civil conspiracy and violation of M.G.L. c. 93A because those claims are so related to the RICO claims that they form part of the same case or controversy.

### Personal Jurisdiction and Venue

24. Venue is proper in this judicial district pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391.

4

25.     All of the defendants except Neuberger, BAG, Biomed, and Clarion are residents of the United States.

26.     A substantial part of the events or omissions giving rise to this lawsuit occurred in Massachusetts; defendants have engaged in their wrongful acts for the specific purpose of preventing AngioDynamics from recovering a judgment this Court issued in Massachusetts.

27.     All of the defendants were fully aware of this Court's judgment at all relevant times and deliberately worked together to shield tens of millions of dollars from the judgment for their own gain and benefit.

28.     This Court therefore has personal jurisdiction over all the defendants because of their concerted, fraudulent enterprise and conspiracy to shield revenues and assets from a judgment of this Court.

29.     In addition, all of the defendants transact substantial business in Massachusetts (within the meaning of M.G.L. c. 223A, § 3(a) and 18 U.S.C. § 1965(a)) by selling (and/or conspiring to sell) products worth many thousands of dollars to customers in this state on a regular basis, and conspiring to shield the revenues of those Massachusetts sales from judgment enforcement.

30.     AngioDynamics requests that this case be venued in the Western Division of this Court because that is the division in which the $74.9 million judgment was entered.

## Parties

31.     AngioDynamics is a Delaware corporation with its principal place of business at 14 Plaza Drive, Latham, NY 12110.

32.     AngioDynamics's mission is to provide benefits to patients by being the leader in design, development, manufacturing and marketing of innovative, proprietary, therapeutic

devices used by interventionalists and surgeons for the minimally invasive treatment of peripheral vascular disease, tumor therapy and other, non-vascular disease.

33.    BAG is an Austrian entity located at Untere Viaduktgasse 6/9, A-1030 Vienna, Austria.

34.    In November 2014, Neuberger converted BAG, which until then had a publicly-traded minority of shares, to a privately held company.

35.    Neuberger made this change in part to conceal information about BAG's operations and actions from AngioDynamics.

36.    Biomed is a Malaysian entity located at Level 6(D) Financial Park Labuan Complex Labuan, Malaysia 87018.

37.    Neuberger is "a citizen of Austria with residences on four continents." *AngioDynamics, Inc. v. Biolitec AG*, 780 F.3d 420, 429 (1st Cir. 2015).

38.    Neuberger is the ultimate owner of controlling shares in all Biolitec group entities and controls the operations and actions of all group entities, including BAG and Biomed.

39.    In addition to the $74.9 million judgment held by AngioDynamics, Neuberger and BAG are also subject to a multi-million-dollar unsatisfied judgment held by Kelly Moran and Carol Morello.

40.    Neuberger, BAG, and Biomed also owe this Court $70 million in unpaid civil contempt fines.

41.    Bakhshpour resides at 7277 Scarsdale Place, San Jose, CA 95120 and/or 7250 Rosencrans Way, San Jose, CA 95139.

42.    US Fiberoptec is a California corporation with a place of business at 175 Bernal Road, Suite 100-15, San Jose, CA 95119.

4823-3199-7023.7

43.     Bakhshpour is Vice President of Sales and Marketing for US Fiberoptec, a position he took immediately after the April 2015 bankruptcy filings of the Trustee Debtors.

44.     Prior to those bankruptcy filings, Bakhshpour had worked in an equivalent position for 22 years at COI.

45.     From at least January 2018 to the present, the US Fiberoptec website has listed, promoted, and offered for sale a wide range of Neuberger/Biolitec group products.

46.     Furcht resides at 1530 Tanglewood Drive, West Chester, PA 19380.

47.     Furcht is managing director of Wisdom.

48.     Wisdom is a Delaware limited liability company formed immediately after the Chapter 7 bankruptcy filings of the Trustee Debtors.

49.     On May 30, 2017, Furcht issued a press release on the Wisdom website stating:

> Wisdom had a very successful AUA in Boston.  It was a reunion of old friends, new prospective customers, and overall interest in the Wisdom Lasers and Twister fibers.  There was a very positive interest in the Xcavator fiber for BPH which was finally presented with FDA approval.

50.     The Twister and Xcavator fibers are Neuberger/Biolitec group products.

51.     On June 30, 2017, Furcht issued a press release on the Wisdom website stating:

> Wisdom Medical introduces the new FDA approved Leonardo 200-watt Duel Wavelength laser.  Compared to the existing EVOLVE 200-watt duel, Leonardo 200 is 60% smaller in size and weight.  The Leonardo 200 has new tough screen technology that allows the user to adjust the amount of 1470 and/or 980 wavelength needed.

52.     The Leonardo laser is a Neuberger/Biolitec group product.

53.     The products listed, promoted, and offered for sale on the Wisdom website from at least January 2018 to the present are Neuberger/Biolitec group products.

54.     Wisdom has an office at 19 Stone Hill Rd, Oswego, IL 60543.

7

55.     LDC is Launch Development Corporation, an Illinois corporation also located at 19 Stone Hill Rd, Oswego, IL 60543.

56.     Jakubowski is the President and owner-operator of LDC.

57.     Jakubowski lives at 13 Cebold Drive, Montgomery, IL 60538.

58.     Clarion is a Canadian entity located at 125 Fleming Drive, Cambridge, Ontario NIT 2B8.

59.     From at least February 2018 to the present, Clarion's website has listed, promoted, and advertised for sale ELVeS Radial Fibers – a Neuberger/Biolitec group product – for use in the treatment of varicose veins.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### Culpable Persons and Enterprise

60.     The culpable persons are defendants Neuberger, BAG, Biomed, Furcht, Bakhshpour, Jakubowski, US Fiberoptec, Wisdom, LDC, and Clarion.

61.     The enterprise consists of the defendants acting collectively as an association in fact, along with other currently unknown persons and entities, to defraud AngioDynamics and shield North American revenues from judgment enforcement.

62.     The enterprise acts as a sales/distribution organization, organized to carry out sales and generate sales revenue.

63.      All of the defendants have worked together and coordinated as an enterprise and each of the defendants contributes to the operation and organization of the enterprise.

### Interstate Commerce

64.     The enterprise has a very substantial effect on interstate commerce.

4823-3199-7023.7

65.     It involves the sale of tens of millions of dollars of products to customers in every

region of the United States, as well as the shipping of products and transmission of business

communications and payments across many state borders.

**Original AngioDynamics Litigation Against Biolitec, Inc. in New York**

66.     In January 2008, AngioDynamics commenced an action for breach of contract

against Biolitec, Inc. (BI) in the U.S. District Court for the Northern District of New York.

67.     There was "a supply and distribution agreement between" BI and

AngioDynamics, under which

> BI agreed to defend and indemnify [AngioDynamics] against all
> third-party patent infringement claims arising out of the marketing
> and distribution of [Neuberger/Biolitec group] products.  Despite
> this agreement, after [AngioDynamics] found itself embroiled in
> patent infringement litigation with a third party . . . BI refused to
> indemnify [AngioDynamics], and [AngioDynamics] ended up
> having to pay substantial damages out of its own pocket. . . . [T]he
> Northern District of New York ultimately found . . . BI liable to
> [AngioDynamics] for breach of contract . . . .

*AngioDynamics, Inc. v. Biolitec AG*, 991 F. Supp. 2d 283, 285-286 (D. Mass. 2014).

68.     On November 8, 2012, the U.S. District Court for the Northern District of New

York entered judgment against BI in the amount of $23,156,287.00.

69.     On January 22, 2013, BI filed a Chapter 11 petition in the U.S. Bankruptcy Court

for the District of New Jersey.

70.     As this Court described:

> On April 3, 2013, the bankruptcy court appointed a trustee,
> pursuant to 11 U.S.C. § 1104, and removed control of [BI] from . .
> . Neuberger.

> The trustee, on behalf of BI, entered into a settlement agreement
> with [AngioDynamics] on July 16, 2013. . . . As part of that
> settlement, [AngioDynamics] agreed to forego efforts to seek
> monetary damages against BI in the New York litigation—BI

9

> apparently had few assets at any rate—with the understanding that
> [AngioDynamics] would instead pursue its remedies against . . .
> [the MA] Defendants in this forum. . . . On August 9, 2013, the
> Bankruptcy Court approved the settlement.

*AngioDynamics, Inc. v. Biolitec AG*, 991 F. Supp. 2d 299, 302 (D. Mass. 2014).

71.     As part of that settlement, AngioDynamics purchased most of BI's assets,

including its customer lists and goodwill.

72.     The NJ Bankruptcy Court summarized the actions of Neuberger, BAG, Biomed,

Furcht, and other Biolitec group parties (collectively the "NJ Defendants") as follows:

> [BI] entered bankruptcy with a $23 million judgment against it and
> relatively few assets from which creditors could recover due to the
> complex corporate structure of the Biolitec Group and the [NJ]
> Defendants' illegal and fraudulent conduct in transferring assets
> out of the reach of creditors.  Rather than seeking to use the
> chapter 11 process to reorganize and rehabilitate [BI]'s business,
> the [NJ] Defendants sought to shed [BI]'s liabilities and destroy
> whatever value remained with the estate by starting up a new entity
> to usurp and benefit from [BI]'s goodwill and customer
> relationships.  Such improper conduct cannot be allowed.

*In re Biolitec, Inc.*, 2015 Bankr. LEXIS 228, *40-41 (Bankr. N.J. Jan. 22, 2015).

73.     Even after the court-ordered sale of BI's customer lists and goodwill to

AngioDynamics, the NJ Defendants, including Neuberger, BAG, Biomed, and Furcht,

> distributed a fact sheet to 35 of [BI's] former endovenous
> customers that stated that [BUS] would now distribute medical
> products formerly distributed by [BI] . . . .

*Id.* at *21.

74.     The NJ Defendants

> formed [BUS] for the purpose of continuing [BI's] business and
> began using [BI's] customer information and goodwill to sell
> products formerly provided by [BI] . . . . [T]he . . . fact sheet
> distributed by [BUS] to [BI's] endovenous customers. . . . stated
> that "the same products that were formerly available from [BI] are
> still available from the Biolitec Group's exclusive U.S. medical

10

> distributor, [BUS]." . . . [BUS] used [BI's] customer information to
> contact [BI's] customers and solicit sales.  Contacting [BI's]
> customers to inform them that the products formerly available
> from [BI] were now available exclusively from [BUS] was a
> flagrant attempt to usurp [BI's] customer information and goodwill
> in violation of the Sale Order and automatic stay.

*Id.* at *35-37.

75.     The NJ Defendants

> readily admit[ted] soliciting [BI's] former customers to purchase
> the same Biolitec Group medical products formerly purchased
> directly from [BI].

*Id.* at *37.

76.     The bankruptcy court concluded that BI's bankruptcy had "only reinforced the

lengths that the [NJ] Defendants are willing to go in order to avoid the negative consequences of

court orders." *Id.* at *46.

77.     The NJ Defendants improperly attempted

> to simply incorporate a new business, unencumbered by [BI's]
> substantial liabilities, to resume [BI's] relationships with its
> customers and pick up [BI's] business precisely where it left off.
> Such a result could not be further from the fundamental purposes
> of the Bankruptcy Code . . . .

*Id.* at *40.

78.     This behavior is precisely what the current defendants have repeated following

the bankruptcies of the Trustee Debtors.

79.     AngioDynamics has received no distribution as a creditor in the BI bankruptcy

case, which converted from Chapter 11 to Chapter 7 in December 2014 as a result of the estate's

administrative insolvency.

4823-3199-7023.7

## Previous Litigation and Judgment in this Court

80.     On October 26, 2009, AngioDynamics commenced a civil action in this Court

against Neuberger and BAG (*AngioDynamics, Inc. v. Biolitec AG, et al.*, 09-cv-30181-MAP).

81.     On March 26, 2010, AngioDynamics amended its complaint, adding Biomed and

BI as parties and adding causes of action.

82.     As the First Circuit summarized, AngioDynamics

> sought to secure payment on [its New York] judgment by bringing
> suit against . . . Neuberger, and . . . Biomed . . . and Biolitec AG . .
> . which, according to [AngioDynamics], had looted BI of over $18
> million in assets in order to render it judgment-proof. . . . As it
> turns out, this would be but the first in a series of attempts to evade
> payment to [AngioDynamics] and to elude the power of the courts.

*AngioDynamics, Inc. v. Biolitec AG*, 823 F.3d 1, 3 (1st Cir. 2016).

83.     In August 2012 AngioDynamics

> learned that BAG, based in Germany, intended to effectuate
> a downstream merger with its Austrian subsidiary. . . . This,
> [the MA] Defendants conceded, would transfer BAG's assets to
> Austria, precluding [AngioDynamics] from enforcing its judgment.
> . . .
>
> [T]he district court issued a preliminary injunction barring [the
> MA] Defendants from carrying out the merger. . . . [H]owever, [the
> MA] Defendants decided to go forward with the merger anyway in
> direct violation of the injunction. . . . despite repeated assurances to
> the district court that they would comply with the order. . . .
>
> On April 11, 2013, the district court issued a coercive civil
> contempt order [impos]ing escalating, monthly fines against
> [the MA] Defendants and an arrest warrant for Neuberger. . . . The
> decision ordered [the MA] Defendants to ''return Biolitec AG to
> the status quo ante,'' which [the MA] Defendants conceded was
> possible . . . .
>
> [The MA] Defendants persisted in stonewalling the district court. .
> . . [The MA] Defendants unequivocally state[d] that they had no
> intention of complying with the contempt order . . . .

*Id.* at 3-4.

84.     The First Circuit

   affirmed the district court's civil contempt sanctions . . . . [The MA] Defendants' unyielding contumacy . . . had resulted in a fine that ''far exceed[ed] the amount of the original judgment [AngioDynamics] [was] attempting to collect.'' . . .

   On April 24, 2015, the district court . . . . "cap[ped] the fine [the MA] Defendants will be liable for at a total amount of $70 million . . . ."

*Id.* at 4.

85.     Neuberger has been a fugitive from the arrest warrant since this Court issued it on April 11, 2013.

86.     The MA defendants – Neuberger, BAG, and Biomed – have never paid a penny of the $70 million in contempt fines this Court imposed and the First Circuit affirmed.

87.     The MA defendants also have defied this Court's order, affirmed by the First Circuit, to restore the status quo existing before completion of BAG's downstream merger.

88.     The other defendants in this action are, and have been at all relevant times, well aware of Neuberger's fugitive status and the MA defendants' repeated defiance of this Court's contempt orders.

89.     On March 18, 2014, this Court entered judgment of $74,920,422.57 against Neuberger, BAG, and Biomed.

90.     This Court found that discovery had

   been thwarted at virtually every turn by [the MA] Defendants' outrageous misconduct. . . .

   [The MA defendants] have consistently attempted to stall this litigation through their dilatory tactics.

*AngioDynamics, supra*, 991 F. Supp. 2d at 288, 294.

13

91.     This Court further described:

> Throughout the course of this litigation . . . [the MA] Defendants
> have tried to circumvent the judicial process and evade
> accountability. . . . [T]heir conduct evolved from evasive, to
> delinquent, to grossly contumacious . . . .

*AngioDynamics, supra*, 991 F. Supp. 2d at 307.

92.     The First Circuit affirmed the judgment, finding the MA defendants' conduct

> was severe, repeated, and deliberate, with no legitimate or
> mitigating explanation for noncompliance. . . . a deliberate pattern
> of stonewalling with the aim of frustrating effective discovery and
> the progress of the case.

*AngioDynamics, Inc. v. Biolitec AG*, 780 F.3d 429, 435-536 (1st Cir. 2015) (citation and internal

quotation marks omitted).

93.     The Supreme Court has denied the MA defendants' two petitions for certiorari.

*Biolitec AG v. AngioDynamics, Inc.*, 136 S.Ct. 535 (2015) and 137 S.Ct. 631 (2017).

94.     The MA defendants have refused to pay a penny of this Court's judgment.

95.     The MA defendants have taken many actions to fraudulently evade the judgment,

including completion of the enjoined BAG merger.

96.     The other defendants in this action are, and at all relevant times have been, well

aware of the unsatisfied judgment against the MA defendants as well as the MA defendants'

refusal to pay any of the judgment and their total resistance to judgment enforcement.

### U.S. Biolitec Group Entities, Post-Judgment Trustee Process, and Chapter 7 Bankruptcies

97.     In 2009-10, when AngioDynamics commenced its previous action in this Court,

there were two U.S. Biolitec group entities – BI and COI – carrying on Neuberger's and the

Biolitec group's U.S. and North American business.

14

98.     BI conducted the Biolitec group's North American sales of medical products, and COI conducted the Biolitec group's North American sales of industrial products.

99.     In 2011, Neuberger created two new U.S.-based entities: BMD and BHUS.

100.    BHUS became the owner of Neuberger's controlling shares in the other U.S. Biolitec entities.

101.    As to BMD, a Biolitec group executive wrote in a January 2012 internal email that BMD was "FDA registered . . . to cover almost all of our products. With all of the lawsuits BMD is a place to separate the past from the future and offer options[.]"

102.    The same executive testified shortly before BI filed for bankruptcy that BMD, or "any of our companies," could sell Neuberger/Biolitec group products if BI went bankrupt.

103.    Neuberger created BUS in 2013, after BI's Chapter 11 Trustee disclosed AngioDynamics's purchase of BI's customer lists, goodwill, and other assets.

104.    As the NJ Bankruptcy Court found:

> Neuberger incorporated [BUS] for the purpose of continuing [BI]'s business . . . . [M]any of the employees who formerly worked for [BI] were later hired by [BUS]. . . . Furcht was one such employee . . . .

*In re Biolitec, supra*, 2015 Bankr. LEXIS 228 at *20.

105.    In sum, Neuberger created and used BUS, BHUS, and BMD to frustrate the claims and judgments of AngioDynamics.

106.    In June 2014, AngioDynamics filed a motion in this Court seeking to enforce its $74.9 million judgment against Trustee Debtors COI, BHUS, BMD, and BUS.

107.    On November 13, 2014, this Court granted the motion and issued trustee process summonses to the Trustee Debtors.

108.    This Court stated:

15

> Mr. Neuberger has a habit of moving assets around and trying to keep them out of the reach of [AngioDynamics] . . . . [If I don't issue the trustee summonses,] I am afraid . . . there will be mice and cobwebs in those cupboards. There will be nothing left [in the Trustee Debtors] because . . . that is pretty much the track record that Mr. Neuberger has.  He is absolutely determined that he is not going to pay off these judgments. . . .
>
> [H]e is quite determined to do everything that he can to avoid paying . . . .

Case No. 09-cv-30181-MAP, PACER Document 464-2 at 20:11-23, 21:6-7.

109.    In December 2014, AngioDynamics served discovery requests and interrogatories on the Trustee Debtors, along with a notice of deposition for Neuberger as their officer, director, and/or managing agent.

110.    The Trustee Debtors moved for a protective order, asserting that Neuberger had recently resigned as their President and Director.

111.    This Court denied the protective order, finding:

> The timing and limited time span of Neuberger's nominal resignation evidence its speciousness and lack of good faith. . . . He is in a unique position to provide necessary discovery as to whether the Trustee[ Debtors] possess assets belonging to the judgment debtors.

Case No. 09-cv-30181-MAP, PACER Document 469.

112.    Despite this ruling, Neuberger still refused to appear for the deposition as noticed.

113.    On April 8, 2015, AngioDynamics moved for default judgment against the Trustee Debtors, seeking to charge them with the full amount of the $74.9 million judgment.

114.    Neuberger believed this Court was going to grant to motion for default, and as a result, on April 17, 2015, five days before their opposition to the motion was due, the Trustee Debtors filed their Chapter 7 bankruptcy petitions in the District of Delaware.

4823-3199-7023.7

115.     A Chapter 7 Trustee, George L. Miller, was appointed for the four Trustee

Debtors, whose Chapter 7 cases were later transferred to the District of New Jersey.

116.     At the time of the April 2015 Chapter 7 filings, Bakhshpour had been employed

by COI for 22 years, since 1993, as Vice President of Sales and Marketing.

117.     Furcht was BI's Director of Endovenous Sales from 2001 until 2013, and was

BUS's North American Vice President of Sales and Marketing from 2013 until the April 2015

Chapter 7 filings.

118.     Immediately following the April 2015 Chapter 7 filings, the Trustee Debtors

ceased operating and their employees, including Bakhshpour and Furcht, were terminated.

119.     According to their Chapter 7 statements of financial affairs, in their last full year

of operation (2014), the Trustee Debtors had $12,951,223.53 in combined business income –

COI $9,163,380.85, BUS $2,493,901.81, and BMD $1,293,940.87.

120.     The Chapter 7 Trustee for the Trustee Debtors filed an adversary complaint in the

New Jersey Bankruptcy Court on April 13, 2017 against BAG, Biomed, Neuberger, Furcht, and

other Neuberger-related parties and entities.

121.     Trustee Miller alleged that these defendants "perpetrated a fraud to shield the

[Trustee] Debtors' assets from the claims of" their "outside creditors . . . which resulted in

damages to the [Trustee] Debtors that . . . exceed $50,000,000.00."

122.     Trustee Miller further alleged that

> In an effort to avoid the claims of outside creditors . . . .
>
> Neuberger, the Officer and Director Defendants, the Griffith Firm
> and Griffith caused the [Trustee] Debtors to transfer at least
> $23,870,962.26 in cash to the Biolitec Foreign Affiliate
> Defendants, $2,181,269.00 in cash to the Griffith Firm and
> Griffith, and valuable patents and other intellectual property to the
> Biolitec Foreign Affiliate Defendants. . . .

17

> At Neuberger's direction, [Bolesh] Skutnik unlawfully entered the [Trustee] Debtor's premises and caused boxes of evidence to be shipped from the [Trustee] Debtors' facility to Germany to avoid discovery. . . .
>
> Skutnik also changed the passwords to the [Trustee] Debtors' online accounts, computers and servers to prevent the Trustee from having access to the [Trustee] Debtors' records.
>
> Neuberger, Skutnik, the Griffith Firm and Griffith have refused to cooperate with the Trustee's counsel, have refused to produce relevant documentation and have delayed, refused or otherwise avoided appearing for Rule 2004 examinations.
>
> This conduct was specifically designed to interfere with the Trustee's efforts and to conceal the full extent of Defendants' wrongdoing. . . .
>
> The wrongful conduct . . . included . . . . [o]rchestrating and implementing the fraudulent Transfers alleged herein as an unlawful scheme to strip out substantially all of the [Trustee] Debtors' assets . . . . [p]reparing and filing materially false documentation regarding the [Trustee] Debtors' assets; . . .

123.    Trustee Miller's adversary proceedings did not involve the RICO enterprise's continuation of the Neuberger/Biolitec group's North American business after the bankruptcy filings.

124.    On August 1, 2017, Trustee Miller entered a settlement in which Neuberger and his adversary proceeding co-defendants agreed to pay $2,180,000.00 cash into the Trustee Debtors' estates.

125.    The New Jersey Bankruptcy Court approved this settlement, and in or about late October 2017, the adversary proceeding defendants made the $2,180,000.00 payment.

126.    Due to the large expenses of administering the estates, almost all of this money has been or will be expended in paying the estates' administrative expenses, including, *inter alia*, a $764,079.29 payment to the law firm of Kaufman, Coren & Ress, P.C. (which represented the

Trustee in his adversary proceeding); a payment of $615,378.95 to accounting professionals

(Miller Coffey Tate LLP); an expected payment of over $700,000.00 to bankruptcy counsel

(Pachulski Stang Ziehl & Jones); and an expected payment of $50,000.00 to a European law firm

(Taylor Wessing).

127.     On September 26, 2017, recognizing the minimal resources available in the

Trustee Debtors' estates – and that administrative claims such as those listed above are paid in

full before general unsecured creditors like AngioDynamics receive any payment –

AngioDynamics entered a settlement with Trustee Miller under which AngioDynamics will

receive an allowed general unsecured claim against the four Trustee Debtors in the amount of

$650,000.00.

128.     Because of the lack of resources in the Trustee Debtors' estates, AngioDynamics

will receive a total ultimate distribution of less than the $650,000.00 amount.

129.     As this Court has ultimately summarized, AngioDynamics

> attempt[ed] to enforce the $74,000,000 judgment . . . brought a
> trustee process . . . and attempted to take deposition of Mr.
> Neuberger and seek discovery against these four Trustee [Debtor]
> entities who held assets, which were in reality assets belonging to
> the [MA] Defendants . . . .
>
> Mysteriously . . . these entities transferred millions of dollars in
> their assets to Europe and then immediately filed for bankruptcy.
> The bankruptcy Trustee is now in charge of the very minimal
> assets of these four . . . entities, and so, once again . . . the
> cupboards are bare . . . and nothing to satisfy the $74,000,000
> judgment.

Case No. 09-cv-30181-MAP, PACER Document 599 at 5:1-23.

**The MA Defendants' Contumacious Defiance of this Court's Orders Compelling Post-Judgment Discovery Relating to the RICO Enterprise**

130.    On June 5, 2015, AngioDynamics served post-judgment document requests and interrogatories on the MA defendants regarding the sales of Neuberger/Biolitec group products in the United States following the Trustee Debtors' Chapter 7 filings.

131.    The MA defendants refused to provide the discovery and AngioDynamics moved to compel.

132.    This Court granted the motion to compel:

> We're talking about discovery which is relevant . . . .
> [AngioDynamics] is on solid ground in seeking this discovery and
> I am going to order that it be produced.

Case No. 09-cv-30181-MAP, PACER Document 512 at 26:24-27:3.

133.    The MA defendants have wholly defied this order and have produced nothing in response.

134.    On October 24, 2016, AngioDynamics served a second round of discovery requests and interrogatories regarding U.S. intellectual property held by Biolitec group entities.

135.    Again, the MA defendants refused to produce the information, and again AngioDynamics moved to compel.

136.    This Court summarized:

> [AngioDynamics] has continued to attempt to find resources, moneys that are substantially controlled and possessed by the [MA] Defendants here from entities other than the Trustee[ Debtors] who are now in bankruptcy, and [AngioDynamics], in connection with that, served interrogatories and . . . requests for production seeking . . . [information on] profits here in the United States as a result of their business activities. . . .
>
> It seems clear from the record that . . . . there are entities in the United States . . . who are continuing to earn money, and that

20

> money is continuing to pour into the pockets of Mr. Neuberger . . .
> . [AngioDynamics is] entitled to know about that and to pursue
> those assets in an effort to satisfy this judgment, so I allowed the
> motion to compel and ordered the [MA] Defendants to provide the
> information. . . .

Case No. 09-cv-30181-MAP, PACER Document 599 at 6:12-7:12.

137.    This Court continued:

> There is strong evidence, which [AngioDynamics] points to, that
> affiliated entities exist beyond the Trustee[ Debtors] and beyond
> the named [MA] Defendants, and there is strong evidence that
> those entities are making money that Mr. Neuberger and his
> corporations are enjoying. . . .

> I've made an order [to produce the discovery], and the [MA]
> Defendants have thumbed their nose at it.  This is typically what
> they've been doing. . . .

> [T]he level of defiance of the Court's orders has reached such an
> egregious level . . . .

> [Neuberger] is not going to provide the information if it was
> ordered by the First Circuit, and if it was ordered nine zip by the
> Supreme Court of the United States, he would never produce that
> information.

*Id.* at 8:24-9:9, 10:13-14, 43:21-25.

138.    On February 17, 2017, this Court issued an order compelling the MA defendants

to comply with the second round of post-judgment document requests and interrogatories.

139.    The MA defendants have wholly defied this second order to compel as well.

140.    AngioDynamics has filed motions seeking sanctions against the MA defendants

for their defiance of both orders to compel; both motions are currently pending before this Court.

141.    The MA defendants' defiance of the post-judgment discovery orders has blocked

AngioDynamics from learning many details of the enterprise, conspiracy, and fraud that are the

basis of this complaint.

142.     However, AngioDynamics has recently obtained information from former Biolitec group insiders regarding the conspiracy and enterprise set forth herein.

### The Current Defendants and the Wrongful Acts of the RICO Enterprise

143.     Defendants Bakhshpour and Furcht had been working with and for Neuberger for decades by the time of the Trustee Debtors' April 2015 Chapter 7 filings.

144.     Both Bakhshpour and Furcht worked with and for Neuberger during the BI bankruptcy when Neuberger fraudulently attempted to shift BI's business to BUS.

145.     Furcht was a named defendant in the BI adversary proceeding; the Bankruptcy Court found he participated in and collaborated with Neuberger's wrongful attempt to shift business from BI to BUS and the rest of the Biolitec group.

146.     All of the defendants are, and have been at all relevant times, fully aware of the $74.9 million judgment against the MA defendants, and of AngioDynamics's efforts to seek enforcement of that judgment against U.S.-based Biolitec group businesses.

147.     All of the defendants are, and have been at all relevant times, aware that any North American business using the Biolitec or CeramOptec names, or formally within the corporate structure of the Biolitec group, would be subject to judgment enforcement.

148.     Jakubowski is a long-time associate and friend of Furcht, dating back to their time working together at Diomed, Inc. in the late 1990s and early 2000s, as well as their time as colleagues at BI in the early 2000s.

149.     Furcht was responsible for sales of Neuberger/Biolitec group products in North America for medical purposes (including treatment of varicose veins and urology issues) for nearly 15 years up to the time of the Trustee Debtors' Chapter 7 filings.

4823-3199-7023.7

150. Jakubowski has decades of experience in the sale and marketing of laser and optical fiber products for medical use.

151. Bakhshpour was responsible for sales of Neuberger/Biolitec group products in the United States for industrial purposes for 22 years until the Trustee Debtors' Chapter 7 filings.

152. Together, all of the defendants conspired to use the bankruptcy liquidation of the Trustee Debtors for the fraudulent purpose of protecting the U.S. and North American Neuberger/Biolitec group business from judgment enforcement.

153. The defendants worked together to continue that same business under the guise of different, non-Biolitec branded entities in order to conceal the revenues and prevent AngioDynamics from enforcing its judgment against those revenues.

154. Furcht created Wisdom immediately after the Chapter 7 bankruptcy filings of the Trustee Debtors.

155. Furcht has been managing partner at Wisdom since April 2015, the very month of the Trustee Debtors' Chapter 7 filings.

156. The Wisdom website has continuously offered, advertised, and promoted Neuberger/Biolitec group products for sale since at least January 2, 2018, including through press releases dated May 30 and June 30, 2017.

157. These advertising offerings constitute mail and wire fraud intended to carry on the Neuberger/Biolitec group medical business in the U.S., to allow Neuberger and the MA defendants to receive revenues from that business, and to shield the revenues from judgment collection efforts.

158. Furcht and Wisdom have profited greatly from this fraudulent enterprise by retaining a portion of the overall revenue as their share of the spoils of this enterprise.

159.   After the Trustee Debtors' Chapter 7 filings, Furcht involved Jakubowski in the RICO enterprise in part to fraudulently evade the injunction imposed by the New Jersey Bankruptcy Court in the BI adversary proceeding.

160.   The New Jersey bankruptcy injunction (which was in effect until January 22, 2017) applied specifically to Furcht, but not to Jakubowski, who was not a party to the injunction adversary proceeding.

161.   For a period subsequent to the Trustee Debtors' Chapter 7 filings, LDC advertised and promoted for sale on its website various Neuberger/Biolitec group medical products.

162.   Sometime in 2017, in order to conceal its role in the RICO enterprise and conspiracy, LDC removed that information from public view on its website, and shifted to accepting orders from customers by text message to Jakubowski.

163.   Furcht also solicits and accepts orders and otherwise communicates with customers by text message.

164.   Bakhshpour became Vice President of Sales and Marketing for US Fiberoptec immediately after the Trustee Debtors' bankruptcy filings.

165.   US Fiberoptec's website has continuously listed, promoted, and offered for sale, since at least January 5, 2018, numerous Neuberger/Biolitec group laser and fiber optic products.

166.   Clarion participates in the RICO enterprise and conspiracy by promoting, advertising, and selling Neuberger/Biolitec group products.

167.   From at least February 2018 to the present, Clarion's website has advertised, promoted, and offered for sale Neuberger/Biolitec group products.

168.   Clarion also participates in the RICO enterprise and conspiracy by concealing the link between Neuberger and Furcht, Jakubowski, Wisdom, and LDC.

169.     Clarion receives products from Neuberger (and foreign Biolitec group entities) and then ships them to Furcht, Jakubowski, Wisdom, and LDC, often with fraudulently altered labeling.

170.     By wholly defying this Court's post-judgment discovery orders, the MA defendants have deliberately concealed information about the RICO enterprise and conspiracy.

171.     The MA defendants, and other conspirators including Furcht, also deliberately concealed information from bankruptcy Trustee Miller by making information and documents belonging to the Trustee Debtors inaccessible to him.

172.     The defendants' RICO enterprise and conspiracy went into effect after the Trustee Debtors filed for bankruptcy and therefore information regarding the enterprise and conspiracy was not available to Trustee Miller or the Trustee Debtors' creditors.

173.     In spite of the MA defendants' deliberate, contumacious refusal to provide court-ordered discovery directly related to the RICO enterprise and scheme, AngioDynamics has so far identified a series of specific wrongful acts by the defendants in furtherance of this scheme and enterprise.

174.     Immediately after the Trustee Debtors' Chapter 7 filings, Bakhshpour and US Fiberoptec assumed the US industrial business previously conducted by COI.

175.     On or about April 17, 2015, Bakhshpour and US Fiberoptec contacted existing customers of Neuberger/Biolitec group, including, but not limited to, BioTek Instruments, Inc. (Winooski, Vermont); Fiberoptic Systems, Inc. (Simi Valley, California); ASD, Inc. (Longmont, Colorado); HORIBA Scientific (Edison, New Jersey); PerkinElmer (Waltham, Massachusetts); National Recovery Technologies, LLC (Nashville, Tennessee); Mettler-Toledo, LLC (Columbus, Ohio); and Bruker (Billerica, Massachusetts).

4823-3199-7023.7

176.    Through email, telephone, and/or text communications, Bakhshpour and US Fiberoptec informed these and other customers that Neuberger/Biolitec products would continue to flow to them through US Fiberoptec despite the Chapter 7 filings, that AngioDynamics would not be able to reach the revenues to satisfy its judgment, and that judgment enforcement would not affect the flow of these products.

177.    Bakhshpour and US Fiberoptec have made continuous efforts, starting in April 2015, to lead these and other customers to believe that there has been no change in the supply of their products despite the Chapter 7 bankruptcies of the Trustee Debtors and the judgment enforcement efforts of AngioDynamics.

178.    Bakhshpour and US Fiberoptec have continued to contact and solicit these and other customers through the internet, through email, and through telephone conversations.

179.    Immediately after the Trustee Debtors' Chapter 7 filings, Furcht created Wisdom to assume the U.S. medical business previously conducted by the Biolitec group.

180.    Wisdom in fact did assume that U.S. medical business beginning in April, 2015.

181.    LDC also assumed a portion of the Trustee Debtors' U.S. medical business beginning in April, 2015.

182.    LDC did so to aid Furcht in evading the NJ Bankruptcy Court's injunction, which applied personally to Furcht.

183.    On or about April 17, 2015, Furcht, Jakubowski, Wisdom, and LDC contacted existing customers of Neuberger/Biolitec group, including United Medical Systems, Inc. (Westborough, Massachusetts); Universal Hospital Services, Inc. (Minneapolis, Minnesota); Millennium Dental Technologies, Inc. (Cerritos, California); Republic Surgical Medworx, Inc. (Rockland, Massachusetts); and ForTec Medical (Hudson, Ohio).

26

184.    Through email, telephone, and/or text communications, Furcht, Jakubowski, Wisdom, and LDC informed these and other customers that Neuberger/Biolitec group products would continue to flow to them through Wisdom and LDC despite the Chapter 7 filings, that AngioDynamics would not be able to reach the revenues to satisfy its judgment, and that judgment enforcement would not affect the flow of these products.

185.    Furcht, Jakubowski, Wisdom, and LDC have made continuous efforts, starting in April 2015, to lead these and other customers to believe that there has been no change in the supply of their products despite the Chapter 7 bankruptcies of the Trustee Debtors and the judgment enforcement efforts of AngioDynamics.

186.    Furcht, Jakubowski, Wisdom, and LDC have continued to contact and solicit these and other customers through the internet, through email, and through telephone conversations.

187.    Public advertisement and promotion of Neuberger/Biolitec group products appeared on LDC's website for a period of time in 2016 and 2017, before being removed.

188.    After April 2015, Clarion contacted Neuberger/Biolitec group customers and informed them that Neuberger/Biolitec group products would continue to flow to them through Clarion despite the Chapter 7 filings, that AngioDynamics would not be able to reach the revenues to satisfy its judgment, and that judgment enforcement would not affect the flow of these products.

189.    Clarion has continued to contact and solicit customers for Neuberger/Biolitec group products through the internet, through email, and through telephone conversations.

190.    Clarion has also fraudulently assisted the enterprise by serving as a conduit through which Neuberger and the MA defendants ship products to Furcht, Jakubowski, Wisdom,

and LDC, including re-labeling and mis-labeling the products before shipping them into the United States, in violation of applicable laws and regulations.

191.    Furcht, Jakubowski, Wisdom, and LDC also re-label and mis-label the products before sale, in violation of applicable laws and regulations.

192.    The purpose of this shipping method is to conceal the connection between Neuberger (and the MA defendants) and the U.S. medical sales.

193.    All of the defendants participate in the RICO enterprise and collectively work together to manage and conduct it.

194.    All of the defendants benefit from the fraudulent enterprise by shielding revenues in which they share – revenues that AngioDynamics otherwise would have collected in judgment enforcement.

195.    All of the defendants are aware of the activities of the other defendants in carrying out this scheme.

196.    The defendants regularly communicate with each other by telephone, email, text, and mail to coordinate their activities.

197.    Detailed evidence and information regarding the full extent of the acts and communications described in this complaint is within the sole knowledge, possession, and control of the defendants and will only be accessible to AngioDynamics through discovery in this action, particularly because the MA defendants have wholly defied this Court's orders compelling them to produce post-judgment discovery that would include such information.

## FIRST CLAIM

### Civil RICO Violation – Bankruptcy Fraud (18 U.S.C. § 152)

198.    This claim incorporates and relies on all portions of this Complaint.

199.    The defendants conspired in a joint enterprise to commit predicate acts of bankruptcy fraud in violation of 18 U.S.C. § 152.

200.    Together, the defendants enacted a scheme by which they liquidated the four Trustee Debtors in Chapter 7 to ensure that the ongoing North American Biolitec group business revenues would not be available to AngioDynamics to satisfy its $74.9 million MA judgment.

201.    The defendants collaborated and worked collectively to shift the Trustee Debtors' business revenues to the defendants' common enterprise.

202.    The purpose and effect of this fraud was twofold.

203.    First, the defendants worked to conceal these revenues from creditor AngioDynamics, to ensure that the MA defendants would continue to receive the same revenues, laundered through front entities US Fiberoptec, Wisdom Medical, LDC, and Clarion that are not formally part of the Biolitec group.

204.    Second, the defendants collectively enriched the non-MA defendants by allowing them to continue receiving a portion of the North American Biolitec group revenue.

205.    Through these acts, all the acts described in this Complaint, and other acts currently known only to the defendants but ascertainable through discovery (all of which are incorporated into and relied on in all counts of this Complaint), defendants have violated 18 U.S.C. § 152, creating liability under 18 U.S.C. § 1962(c).

206.    The enterprise's illegal and fraudulent acts have continued for nearly three years.

4823-3199-7023.7

207.     Defendants are depending on their illegal actions to continue selling products in the United States and North America and thus will continue the RICO enterprise indefinitely unless stopped by this lawsuit.

208.     Defendants' illegal and fraudulent acts have damaged AngioDynamics by preventing it from enforcing its judgment against tens of millions of dollars in sales revenues over the period since the April 2015 Chapter 7 bankruptcy filings and by costing AngioDynamics hundreds of thousands of dollars in legal expenses in pursuit of judgment enforcement efforts.

## SECOND CLAIM

### Civil RICO Violation – Wire Fraud (18 U.S.C. § 1343)

209.     This claim incorporates and relies on all portions of this Complaint.

210.     The allegations detailed in this Complaint constitute predicate acts of wire fraud in violation of 18 U.S.C. § 1343.

211.     The defendants have made a great number of transmissions by wire in interstate commerce to carry out their fraudulent scheme.

212.     This Complaint details transmissions AngioDynamics has been able to identify, including, *inter alia,* the following.

213.     On or about April 17, 2015, Bakhshpour and US Fiberoptec telephoned, emailed, and/or texted various customers of Neuberger/Biolitec group, including BioTek Instruments, Inc. (Winooski, Vermont); Fiberoptic Systems, Inc. (Simi Valley, California); ASD, Inc. (Longmont, Colorado); HORIBA Scientific (Edison, New Jersey); PerkinElmer (Waltham, Massachusetts); National Recovery Technologies, LLC (Nashville, Tennessee); Mettler-Toledo, LLC (Columbus, Ohio); and Bruker (Billerica, Massachusetts).

30

214.    In these wire communications, Bakhshpour and US Fiberoptec informed these and other customers that Neuberger/Biolitec group products would continue to flow to them through US Fiberoptec despite the Chapter 7 filings, that AngioDynamics would not be able to reach the revenues to satisfy its judgment, and that judgment enforcement would not affect the flow of these products.

215.    On or about April 17, 2015, Furcht, Jakubowski, Wisdom, and LDC telephoned, emailed, and/or texted existing customers of Neuberger/Biolitec group, including United Medical Systems, Inc. (Westborough, Massachusetts); Universal Hospital Services, Inc. (Minneapolis, Minnesota); Millennium Dental Technologies, Inc. (Cerritos, California); Republic Surgical Medworx, Inc. (Rockland, Massachusetts); and ForTec Medical (Hudson, Ohio).

216.    In these wire communications, Furcht, Jakubowski, Wisdom, and LDC informed these and other customers that Neuberger/Biolitec group products would continue to flow to them through Wisdom and LDC despite the Chapter 7 filings, that AngioDynamics would not be able to reach the revenues to satisfy its judgment, and that judgment enforcement would not affect the flow of these products.

217.    After April 17, 2015, Clarion telephoned, emailed, and/or texted existing customers of Neuberger/Biolitec group, and informed them that Neuberger/Biolitec group products would continue to flow to them through Clarion despite the Chapter 7 filing, that AngioDynamics would not be able to reach the revenues to satisfy its judgment, and that judgment enforcement would not affect the flow of these products.

218.    On May 30, 2017 and June 30, 2017, Furcht and Wisdom posted online press releases promoting the sale of Neuberger/Biolitec products.

219.     From at least January 5, 2018 continuously to the present, Furcht, Bakhshpour, Wisdom, and US Fiberoptec have advertised and promoted Biolitec/Neuberger products for sale on their internet websites.

220.     In 2016 and 2017, LDC advertised and promoted Biolitec/Neuberger products for sale on its internet website.

221.     From at least February 2018 continuously to the present, Clarion has advertised and promoted Biolitec/Neuberger products for sale on its internet website.

222.     The MA defendants have assisted the other defendants in promoting and advertising Neuberger/Biolitec group products online by providing advertising and promotional materials including brochures, videos, and other such materials.

223.     Furcht, Bakhshpour, Jakubowski, Wisdom, US Fiberoptec, LDC, and Clarion have solicited, accepted, and filled millions of dollars in product orders via internet, telephone, email, and text communications.

224.     The defendants have extensively used the wires – internet, email, text messages, and similar mechanisms – to communicate with each other to conduct the enterprise and conspiracy.

225.     Through the foregoing series of acts, all the acts described in this Complaint, and other acts currently known only to the defendants but ascertainable through discovery, the defendants have violated 18 U.S.C. § 1343, creating liability under 18 U.S.C. § 1962(c).

226.     The enterprise's illegal and fraudulent acts have continued for nearly three years.

227.     Defendants are depending on their illegal actions to continue selling products in the United States and North America and thus will continue the RICO enterprise indefinitely unless stopped by this lawsuit.

228.     Defendants' illegal and fraudulent acts have damaged AngioDynamics by preventing it from enforcing its judgment against tens of millions of dollars in sales revenues over the period since the April 2015 Chapter 7 bankruptcy filings and by costing AngioDynamics hundreds of thousands of dollars in legal expenses in pursuit of judgment enforcement efforts.

## THIRD CLAIM

### Civil RICO Violation – Mail Fraud (18 U.S.C. § 1341)

229.     This claim incorporates and relies on all portions of this Complaint.

230.     The allegations detailed in this Complaint constitute predicate acts of mail fraud in violation of 18 U.S.C. § 1341.

231.     The defendants have made extensive use of the mail and interstate carriers to carry out their fraudulent scheme.

232.     This Complaint details uses of the mail and interstate carriers AngioDynamics has been able to identify, including, *inter alia*, the following.

233.     Furcht, Jakubowski, Wisdom, LDC, and Clarion have arranged sales by mail and interstate carrier, and have shipped millions of dollars of Neuberger/Biolitec group products to customers throughout the U.S. and North America, including United Medical Systems, Inc. (Westborough, Massachusetts); Universal Hospital Services, Inc. (Minneapolis, Minnesota); Millennium Dental Technologies, Inc. (Cerritos, California); Republic Surgical Medworx, Inc. (Rockland, Massachusetts); and ForTec Medical (Hudson, Ohio).

234.     Bakhshpour and US Fiberoptec have arranged sales by mail and interstate carrier, and have shipped Neuberger/Biolitec group products to, BioTek Instruments, Inc. (Winooski, Vermont); Fiberoptic Systems, Inc. (Simi Valley, California); ASD, Inc. (Longmont, Colorado);

HORIBA Scientific (Edison, New Jersey); PerkinElmer (Waltham, Massachusetts); National Recovery Technologies, LLC (Nashville, Tennessee); Mettler-Toledo, LLC (Columbus, Ohio); and Bruker (Billerica, Massachusetts).

235.    Furcht, Jakubowski, Wisdom, LDC, and Clarion, along with the other defendants, have employed an elaborate, fraudulent, and unlawful shipping scheme to conceal their connection to Neuberger and the Biolitec group.

236.    Under this scheme, European Biolitec entities ship products to Clarion in Ontario; Clarion then re-labels the products and ships them into the United States to Furcht, Jakubowski, LDC, and Wisdom.

237.    Furcht, Jakubowski, LDC, and Wisdom then improperly add additional shipping labels to the packaging, in violation of FDA requirements, before shipping them to end customers.

238.    The purpose of this circuitous shipping route is to fraudulently conceal the connection between Furcht, Jakubowski, LDC, Wisdom, and the Neuberger/Biolitec group.

239.    This use of multiple labels on shipped medical devices is unlawful.

240.    The defendants improperly and fraudulently rely on FDA marketing authorizations that do not apply to the products shipped.

241.    Through the foregoing series of acts, all the acts described in this Complaint, and other acts currently known only to the defendants but ascertainable through discovery, defendants have violated 18 U.S.C. § 1341, creating liability under 18 U.S.C. § 1962(c).

242.    The enterprise's illegal and fraudulent acts have continued for nearly three years.

243.     Defendants are depending on their illegal actions to continue selling products in the United States and North America and thus will continue the RICO enterprise indefinitely unless stopped by this lawsuit.

244.     Defendants' illegal and fraudulent acts have damaged AngioDynamics by preventing it from enforcing its judgment against tens of millions of dollars in sales revenues over the period since the April 2015 Chapter 7 bankruptcy filings and by costing AngioDynamics hundreds of thousands of dollars in legal expenses in pursuit of judgment enforcement efforts.

## FOURTH CLAIM

### Civil RICO Violation – Money Laundering (18 U.S.C. § 1956) and Conspiracy to Commit Money Laundering

245.     This claim incorporates and relies on all portions of this Complaint.

246.     The allegations detailed in this Complaint constitute the predicate acts of money laundering in violation of 18 U.S.C. § 1956, and conspiracy to commit money laundering.

247.     The defendants have entered into a vast series of financial transactions, including the receipt of millions of dollars in sales revenues through banking and wire transfers and payments, designed to conceal and/or disguise the ownership and control of the proceeds involved in order to protect them from being reached to satisfy AngioDynamics's judgment against the MA defendants.

248.     Defendants have accepted millions of dollars in payments from customers into regional and national banks with substantial effects on interstate commerce.

249.     Defendants have transmitted millions of dollars generated by the enterprise from the United States out of the country to the overseas MA defendants through the wires (electronic and wire transfers) and mails.

250.     The enterprise's illegal and fraudulent acts have continued for nearly three years.

251.     Defendants are depending on their illegal actions to continue selling products in the United States and thus will continue the RICO enterprise indefinitely unless stopped by this lawsuit.

252.     Defendants' illegal and fraudulent acts have damaged AngioDynamics by preventing it from enforcing its judgment against tens of millions of dollars in sales revenues over the period since the April 2015 Chapter 7 bankruptcy filings and by costing AngioDynamics hundreds of thousands of dollars in legal expenses in pursuit of judgment enforcement efforts.

## FIFTH CLAIM

### Civil RICO Violation – Travel Act (18 U.S.C. § 1952)

253.     This claim incorporates and relies on all portions of this Complaint.

254.     The allegations detailed in this Complaint constitute violations of 18 U.S.C. § 1952.

255.     Defendants have used the mails and other facilities in interstate and foreign commerce with intent to distribute the proceeds of their unlawful money laundering activity and money laundering conspiracy.

256.     Defendants have used the mails and other facilities in interstate and foreign commerce, with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on, of their unlawful money laundering activity and money laundering conspiracy.

257.     The enterprise's illegal and fraudulent acts have continued for nearly three years.

36

4823-3199-7023.7

258.     Defendants are depending on their illegal actions to continue selling products in the United States and thus will continue the RICO enterprise indefinitely unless stopped by this lawsuit.

259.     Defendants' illegal and fraudulent acts have damaged AngioDynamics by preventing it from enforcing its judgment against tens of millions of dollars in sales revenues over the period since the April 2015 Chapter 7 bankruptcy filings and by costing AngioDynamics hundreds of thousands of dollars in legal expenses in pursuit of judgment enforcement efforts.

## SIXTH CLAIM

### Conspiracy to Violate RICO (18 U.S.C. § 1962(d))

260.     This claim incorporates and relies on all portions of this Complaint.

261.     The allegations detailed in this Complaint constitute an unlawful conspiracy to violate the RICO statute, in violation of 18 U.S.C. § 1962(d).

262.     Each of the defendants has knowingly joined the conspiracy in violation of RICO and each defendant has involved himself/itself, directly and indirectly, in the commission of at least two predicate offenses within the last three years, as set forth in this Complaint.

263.     Defendants' illegal and fraudulent acts have damaged AngioDynamics by preventing it from enforcing its judgment against tens of millions of dollars in sales revenues over the period since the April 2015 Chapter 7 bankruptcy filings and by costing AngioDynamics hundreds of thousands of dollars in legal expenses in pursuit of judgment enforcement efforts.

4823-3199-7023.7

## SEVENTH CLAIM

**Conspiracy to Prevent AngioDynamics from
Enforcing Its Judgment (Massachusetts State Law)**

264.     This claim incorporates and relies on all portions of this Complaint.

265.     The actions detailed in this Complaint constitute an unlawful conspiracy to

prevent AngioDynamics from enforcing its judgment, in violation of Massachusetts state law.

266.     The defendants have implemented, and continue to carry out, a common plan to

tortiously prevent AngioDynamics from collecting its judgment.

267.     Each of the defendants know of the plan and its purpose and have taken

affirmative steps to encourage the achievement of the result.

268.     The underlying tortious conduct is the effort to defraud AngioDynamics by

preventing it from collecting its judgment.

269.     The defendants have been collectively able to negate the safeguards that would

have prevented any of them, acting alone, from accomplishing the fraud that the enterprise and

conspiracy as a whole has achieved.

270.     Defendants' illegal and fraudulent acts have damaged AngioDynamics by

preventing it from enforcing its judgment against tens of millions of dollars in sales revenues

over the period since the April 2015 Chapter 7 bankruptcy filings and by costing

AngioDynamics hundreds of thousands of dollars in legal expenses in pursuit of judgment

enforcement efforts.

4823-3199-7023.7

## EIGHTH CLAIM

### Unfair and Deceptive Business Acts and Practices (M.G.L. c. 93A)

271.    This claim incorporates and relies on all portions of this Complaint.

272.    The allegations detailed in this Complaint constitute unfair and deceptive acts and practices in violation of M.G.L. c. 93A.

273.    AngioDynamics is a business in trade or commerce that has suffered loss of money or property due to defendants' use of unfair methods of competition and unfair and deceptive practices, as set forth in this Complaint.

274.    The center of gravity of the acts or practices committed by defendants is primarily and substantially in Massachusetts, because the purpose and effect of the conspiracy and RICO enterprise is to prevent collection of the $74.9 million judgment entered in Massachusetts by this Massachusetts federal court.

WHEREFORE, AngioDynamics hereby demands judgment against defendants as follows:

- Compensatory damages in the amount of revenues and other monies, funds, and assets AngioDynamics has been prevented from reaching to satisfy its MA judgment, along with attorneys' fees and costs AngioDynamics has incurred to date in seeking to enforce its MA judgment;

- Treble damages as provided in applicable law;

- Punitive damages as provided in applicable law;

- Attorneys' fees and costs of this action;

4823-3199-7023.7

- Injunctive and other equitable relief, as provided in applicable law, to stop the operation of the RICO enterprise and conspiracy, to ensure that any of its fruits are applied to satisfy AngioDynamics's judgment, and to prevent it from continuing in any guise;

- Any other and further relief the Court deems proper.

  AngioDynamics demands a jury trial on all issues so triable.


Dated: March 15, 2018                                   /s/ *William E. Reynolds*
                                                        William E. Reynolds
                                                        BBO # 629495
                                                        Nixon Peabody LLP
                                                        *Attorneys for Plaintiff AngioDynamics, Inc.*
                                                        677 Broadway, 10th Floor
                                                        Albany, New York 12207
                                                        Phone: (518) 427-2687
                                                        Fax:    (855) 897-1993
                                                        wreynolds@nixonpeabody.com